## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION
## AT LEXINGTON

**CIVIL ACTION NO. 11-340-CJS**

**MARTY R. STEVENS**                                                      **PLAINTIFF**

**v.**                              **MEMORANDUM OPINION AND ORDER**

**DAVID GOOCH, ET AL.**                                                  **DEFENDANTS**

* * * * * * * * * * * * * *

This matter is before the Court on the Motion for Summary Judgment filed by Defendants, David Gooch and Lincoln County, Kentucky (R. 63). The parties have consented to jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c) and the matter is ripe for consideration. For the reasons explained below, Defendants' Motion for Summary Judgment will be **granted.**

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Factual Background

On October 20, 2010, Plaintiff was arrested and taken to the Lincoln County Jail where he was delivered at approximately 10:40 p.m. to the custody of the jailer, Defendant David Gooch.[1] (R. 40, at ¶ 6, R. 56, at 18). Plaintiff alleges that he was placed in a holding tank, where he slipped and fell on liquid that had accumulated on the floor. (R. 40, at ¶ 6, R. 50-1, at 14-16). As a result of his slip and fall, Plaintiff claims he suffered injuries to his right ankle. (*Id.*). Plaintiff reported the incident to guards at the jail and requested medical attention. (*Id.*).

---

[1]Plaintiff alleges that he was a pretrial detainee at Lincoln County Jail from October 20, 2010, until July 22, 2011, the date he was sentenced in Garrard Circuit Court. (R. 40, at 1). He alleges he remained an inmate at the facility until July 25, 2011. (R. 40, at ¶ 3.)

After his fall, he was seen by the jail nurse, Pat Brown. (*Id*.). She examined Plaintiff's ankle and determined the injury was a sprain. (*Id*.). At that time, Nurse Brown observed that Plaintiff had an abscess on his arm and decided to have Plaintiff transported to Bluegrass Clinic to have the abscess examined. (*Id*.). He was seen at Bluegrass Clinic on October 21, 2010. (R. 62, at 5). The physician's assistant at Bluegrass Clinic, Heather Hoewing, examined the abscess on Plaintiff's arm. (*Id*.). She also examined Plaintiff's ankle and recommended Plaintiff undergo an x-ray of his ankle that same day.[2] (*Id*. at 5-6). Physician's Assistant Hoewing testified that the jail employee who accompanied Plaintiff to the appointment relayed to her that the recommendation for an x-ray was refused because he had not been sent to the clinic for treatment of his ankle. (*Id*. at 5-7). She documented the refusal, prescribed ibuprofen for pain, and suggested he return on October 24, 2010. (*Id*. at 49). Defendant Gooch testified that he would never make a decision refusing recommended medical treatment and would never authorize such a decision. (R. 51, at 27). Nurse Brown also testified that she would not have refused a doctor's requested treatment. (R. 57, at 50). It is unclear who was responsible for refusing Physician's Assistant Hoewing's recommendation to obtain an x-ray, but it is undisputed that an x-ray was not performed on October 21, 2010.

On October 25, 2010, Plaintiff returned to Bluegrass Clinic in follow-up for the abscess on his arm, but his chief complaint was cardiac symptoms for which he was hospitalized overnight for observation. (R. 62, at 7-8). Physician's Assistant Hoewing did not recall looking at Plaintiff's ankle at this appointment, and there is no notation on the medical record referencing the ankle.

---

[2] Ms. Hoewing testified that normally she would not need prior authorization from the jail for an x-ray and would simply send the patient down the hall to have it done. (R. 62, at 24-25). Although she could not recall the specific instance of this case, it appears the x-ray machine at Bluegrass Clinic was either down or the technician was unavailable, requiring Plaintiff to be transferred across the street to the hospital in order to have an x-ray performed. (R. 62, at 22, 24; R. 53, at 15; R. 50, at 13-14).

However, she explained that the main concern at that appointment was Plaintiff's chest pain. (*Id*.). Plaintiff again returned to the clinic on November 2, 2010, for follow-up of the abscess on his arm and he was also complaining of anxiety. (*Id*. at 9). Physician's Assistant Hoewing did not recall whether she examined Plaintiff's ankle during this visit and no reference is made to the ankle in the medical note of that date. (*Id*. at 9, 41-43). She recommended he return for follow-up treatment in two weeks.

On November 15, 2010, Plaintiff returned to the clinic in follow-up of the abscess, and he was complaining of ankle pain. (R. 62, at 10, 37-39). Physician's Assistant Hoewing examined Plaintiff's ankle and noted it was still swollen and weak, as well as tender along both the lateral aspect of the malleolus and medially. (*Id*.). She noted Plaintiff was, however, able to partially bear weight on it. She ordered an x-ray on Plaintiff's right ankle, which revealed: "a moderately displaced fracture of the medial malleolus with associated soft tissue swelling." (*Id*. at 40). Physician's Assistant Hoewing refilled Plaintiff's prescription for ibuprofen and referred him to an orthopedic specialist–Cumberland Foot and Ankle. (*Id.* at 32; R. 50, at 14; R. 57-1, at 32). Plaintiff testified that his ankle was placed in an air cast at that appointment, and stated, in answer to an interrogatory, that Guard Dennis Ray gave him crutches. (R. 50, at 14; R. 50-1, at 15).

A November 16, 2010, medical note from Bluegrass Clinic states:

> PT is scheduled for referral appt. with Cumberland Foot and Ankle (at Ft. Logan Hospital in Stanford) on Dec. 7, 2010 at 8:30 a.m. Called Pat at the Lincoln County Jail and told her that even though she had not wanted to do the referral, Dr. James instructed me to make the appt. for PT and let her decide whether they would keep it. Pat was notified and said she would handle it from there.

(R. 57-1, at 32, R. 61, at 21). It appears the December 7, 2010, appointment was rescheduled to January 4, 2011. (R. 57, at 20-21, R. 57-1, at 20). The circumstances behind the alleged

rescheduling are unclear as Nurse Brown could not recall whether the December 7, 2010, appointment was kept, and had no memory of rescheduling it. (R. 57, at 18-20).

While awaiting his January 4, 2011, appointment with the specialist at Cumberland Foot and Ankle, Plaintiff continued to report ankle pain. On November 21, 2010, he completed a "health care services request form," complaining of pain and noting that he thought his ankle was infected. The following morning Nurse Brown examined Plaintiff, and made an appointment with Bluegrass Clinic for November 23, 2010. (R. 57-1, at 27). On November 23, 2010, Plaintiff was seen by Physician's Assistant Lucas Kennedy, who noted Plaintiff was complaining of ankle pain, which was causing him to feel nauseous. (R. 57-1, at 29-31). Because Plaintiff reported having an appointment scheduled with an orthopedic specialist, P.A. Kennedy suggested Plaintiff return for follow-up in one month. (*Id*.).

On November 28 and December 10, 2010, Plaintiff completed a "health care services request form" noting his ankle pain and stating the pain was causing other symptoms, including high blood pressure. (R. 57-1, at 25-26, 37-38). Nurse Brown received both requests, noted his next appointments, but only examined him on December 10, 2010, without notation of any objective findings or subjective complaints. (*Id*.). On December 12, 2010, Plaintiff again completed a "health care services request form" stating he needed to see a doctor because he thought his ankle was infected and the pain was making him sick. (*Id*. at 24). On December 13, 2010, Nurse Brown examined Plaintiff and noted no infection was present. (*Id*.). Nurse Brown also noted Plaintiff's appointment with Cumberland Foot and Ankle on January 4, 2011, and she gave him ibuprofen for the pain. (*Id*.). Bluegrass Clinic records indicate that on December 13, 2010, Plaintiffs's follow-up appointment scheduled for December 15, 2010, was cancelled by jail personnel. (R. 61, at 23).

4

On December 24, 2010, at 6:00 (not clear if a.m. or p.m.), Plaintiff completed a "health care services request form" stating he was in pain from his broken ankle, it was causing him to feel sick, and he was having trouble eating and sleeping. (R. 57-1, at 21). At approximately 8:30 p.m. officers responded to Plaintiff's cell where they found Plaintiff on the floor with blood on his face. (R. 54, at 28). Plaintiff informed the officers that his ankle gave out on him and he fell. (*Id.*). As a result of the fall, Plaintiff was transported to Fort Logan Hospital. (*Id.*). According to the incident report created by Deputy Keith Hale, an x-ray was conducted on Plaintiff's ankle and the doctor stated the ankle was broken and Plaintiff would need surgery. (*Id.*). Nurse Brown followed up with Plaintiff on December 27, 2011, and gave him ibuprofen for his pain.

On January 3, 2011, Plaintiff completed another "health care services request form," stating his blood pressure was high and his ankle was the cause. (R. 57-1, at 17). On January 4, 2011, Nurse Brown examined Plaintiff at 11:30 a.m., and noted he had an appointment with Bluegrass Clinic at 3:10 the same day. (*Id.*). Bluegrass Clinic records indicate Plaintiff was seen by Physician's Assistant Lucas Kennedy with chief complaint of pain. P.A. Kennedy noted Plaintiff's tenderness over medial malleolus, and also noted he was scheduled for surgery on January 7, 2011, at Fort Logan Hospital. (R. 61, at 26).

Plaintiff was also seen by Dr. Jensen at Cumberland Foot and Ankle on or about January 4, 2011. (R. 57-1, at 13-14, 18-19). Dr. Jensen noted joint instability, foot pain, and ankle fracture. (*Id.*). She ordered an MRI, and noted Plaintiff was to return for surgical correction. (*Id.*). On January 6, 2011, Nurse Brown contacted Dr. Jensen about Plaintiff's diagnosis and prognosis. (R. 57, at 29, 57-1, at 12). Nurse Brown made a note that the Doctor reported Plaintiff had a dislocated fracture and an unstable ankle joint, and he should not ambulate on that ankle. (*Id.*). Plaintiff

underwent an MRI on January 6, 2011, which confirmed medial malleolar fracture. (R. 53, at 16, R. 57-1, at 18, R. 62, at 34; R. 62, at 34-35). There is no indication why the surgery did not take place on January 7, 2011, as reported by P.A. Kennedy. (R. 61, at 26). According to Plaintiff, the surgery was denied or rescheduled by jail personnel. (R. 40, at ¶ 9; R. 50, at 16).

On January 12, 2011, Plaintiff completed a "health care services request form," stating his ankle was getting worse and the bone was "poking out." (R. 57-1, at 9). On January 13, 2011, Nurse Brown examined Plaintiff and requested a catastrophic medical transfer from the Department of Corrections ("DOC") for Plaintiff's ankle surgery. (R. 57-1, at 9, 11). On January 16, 2011, Plaintiff completed a "health care services request form," noting his ankle pain and stating that "the bone [was] showing - pushing up the skin." (R. 57-1, at 7). Nurse Brown examined Plaintiff on January 17, 2011, and noted that she was awaiting a response from DOC on her request for a catastrophic medical transfer. (*Id*.). Later that same day, Nurse Brown received a response from the DOC deferring her request for catastrophic medical transfer for Plaintiff. (R. 57, at 35). Nurse Brown documented the DOC's response in a "nurse note," which reads "DOC states that he will be a state inmate in a couple of weeks [and] they will accept him then for surgery on [right] ankle." (*Id*.; R. 57-1, at 10).

On January 21, 2011, Plaintiff again fell in the shower of his cell, causing the bone to protrude from the wound on his ankle. (R. 50-1, at 3; R. 60, at 43-44). Plaintiff was transferred to Ephraim McDowell Regional Medical Center, and the Medical Center ultimately sent him to University of Kentucky Hospital. (R. 40, at ¶ 11, R. 53, at 17; R. 59, at 15). According to Plaintiff, he underwent surgery not to fix his ankle, but to clean the wound and stabilize and splint the fracture. (R. 40, at ¶ 11, R. 50-1, at 16). Although not entirely clear, Plaintiff's ankle was placed in either a

plaster cast or a "boot" after surgery.  (R. 50, at 22-23, 64-65).  Plaintiff stated the ankle was not repaired at that time because the surgeon wanted to wait to be sure there was no infection in the bone.  (R. 50, at 15-16).

For the next several months, Plaintiff continued to complain of ankle pain.  (R. 57-1, at 2; R. 58-1, at 15, 20-21, 25, 35, 39).  He was seen by doctors for ankle pain on February 5, 2011, March 8, 2011, March 9, 2011, March 24, 2011, and June 24, 2011.  (R. 40, at ¶ 12; R. 57-1, at 2-4; R. 54, at 24; 58-1, at 17, 45-46).[3]  Plaintiff testified that "around March" of 2011, he could not be sure of the month, he talked to Defendant Gooch about his ankle, asking him when he was going to have surgery and why it was taking so long.[4]  (R. 50, at 5-6).  He testified that in response, Jailer Gooch stated that he was "getting everything took care of, scheduling and everything."  (*Id*.).   Plaintiff admitted this was the only conversation he had with Jailer Gooch about his ankle.  (*Id*.).

Nurse Johnson's[5] notes indicate that on May 16, 2011, she called Dr. Wright's office to inquire about Plaintiff's surgery, and was told the record indicated a plan for surgery but no date had been set.  (R. 58-1, at 17).  Her notes further indicate that surgery on Plaintiff's ankle had been scheduled and rescheduled multiple times for multiple reasons.  (R. 58-1, at 11-13, 17).  A June 24, 2011, note states that after learning his surgery had been cancelled, Plaintiff fell again and was sent to the emergency room for an evaluation of his ankle.  (R. 58-1, at 17).  The records indicate that

---

[3]The medical records also indicate that Plaintiff was hospitalized March 30-31, 2011, for appendicitis.  (R. 58-1, 33-37, 40; R. 50, at 40-41).

[4]Jailer Gooch testified that the conversation he had with Plaintiff about his ankle occurred during a state inspection on May 28, 2011.  (R. 50, at 37).

[5]Apparently there was a change in the provider of medical care at the jail in early 2011, and Nurse Brown stopped working at the jail.  (R. 57, at 7; R. 58, at 41; R. 51, at 24-25).  Nurse Johnson began working at the Lincoln County Jail in March or April of 2011.  (R. 58, at 3).

Nurse Johnson had communications with the hospital multiple times from May 16, 2011, to July 28, 2011, regarding the scheduling of Plaintiff's surgery. (*Id.* at 10-14, 17). Nurse Johnson testified that she recalled Plaintiff had been scheduled for surgery on his ankle in July 2011, but the surgery had to be rescheduled to August 12, 2011, due to staffing problems caused by another inmate's medical emergency. (R. 58, at 11-13; R. 58-1, at 6-14, 17).

Plaintiff alleges that on July 22, 2011, he was sentenced in Garrard Circuit Court and thus, no longer a pretrial detainee.[6] (R. 40, at ¶ 3). On July 27, 2011, Nurse Johnson sent a fax to Dr. Wright at University of Kentucky Hospital seeking records to obtain preauthorization since Plaintiff had recently become a state inmate. (R. 58-1, at 3). It is not clear why the August 12, 2011, surgery was not conducted. Plaintiff stated in response to an interrogatory that he did not have surgery to repair his right ankle until March 12, 2012. (R. 50-1, at 16). Plaintiff alleges that he has continued to suffer from constant pain since his March 12, 2012, surgery and can only walk with the assistance of a walker or a cane. (R. 40, at ¶ 13).

### B.    Procedural Background

On October 13, 2011, Plaintiff filed his *pro se* Complaint asserting claims under 42 U.S.C. § 1983 against Defendant Gooch alleging his constitutional rights were violated because he was denied adequate medical treatment while confined at Lincoln County Jail. (R. 1). Plaintiff's Complaint was originally filed in the Western District of Kentucky, but was transferred to the Eastern District of Kentucky. (R. 1; R. 5). On September 11, 2012, Plaintiff obtained counsel to

---

[6]While Plaintiff mentioned in his deposition that he entered a guilty plea in the underlying action, he did not testify as to the date his plea was entered. (R. 50, at 27).

represent him in this matter. (R. 21). Thereafter, the parties consented to magistrate jurisdiction pursuant to 28 U.S.C. § 636(c). (R. 30; R. 34).

On March 1, 2013, Plaintiff filed a Motion for Leave to File an Amended Complaint (R.35), which Motion was granted on July 2, 2013 (R. 38). On July 9, 2013, Plaintiff filed, through counsel, an Amended Complaint, which added a § 1983 claim against Lincoln County, Kentucky, and several state law claims against Defendant Gooch. (R. 40). The parties completed discovery, and Defendants filed a Motion for Summary Judgment. (R. 63). Plaintiff has filed a Response (R. 69), to which Defendants filed a reply (R. 70). The matter is ripe for review.

## II.    LEGAL STANDARD

Under the federal rules, summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Wilson v. Karnes*, No. 2:06-cv-392, 2009 WL 467566, at *2 (S.D. Ohio Feb. 24, 2009) (*citing Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978)). In reviewing motions for summary judgment, the Court must view all facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88; *Dominguez v. Correctional Medical Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). The nonmoving party, however, must provide more than a "mere scintilla of evidence"; there must be sufficient evidence on which the jury could reasonably find for the nonmoving party. *Dominguez*, 555 F.3d at 549. Also, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).

## III.    ANALYSIS

### A.    Plaintiff's claims are not barred by the Prison Litigation Reform Act.

Defendants argue that Plaintiff's claims are barred because he did not exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA).  (R. 63-1, at 15). The statute provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Here, Defendants assert that Plaintiff failed to exhaust his administrative remedies because, by his own admission, he only spoke to Defendant Gooch about his ankle injury on one occasion.  (R. 63-1, at 16).

In support of dismissal, Defendants argue that under the PLRA the prisoner must attach copies of any grievance decisions to his complaint, the prisoner must exhaust his administrative remedies as to each defendant, and a complaint containing both unexhausted and exhausted claims must be dismissed because the Sixth Circuit requires total exhaustion of all claims.  (R. 63-1, at 16). Unfortunately for Defendants' argument, the Supreme Court has struck down the requirements on which Defendants rely.  *Jones v. Bock*, 549 U.S. 199 (2007).  Under *Jones*, an inmate is not required to specifically plead or demonstrate exhaustion in his complaint because failure to exhaust is an affirmative defense.  *Id*. at 216.  Similarly, "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances."  *Id*. at 219.  Finally, the Supreme Court rejected the Sixth Circuit's total exhaustion requirement.  *Id*. at 221-22.  Accordingly, Plaintiff's claims cannot be dismissed for these reasons.

Additionally, there is evidence that Plaintiff did exhaust his administrative remedies. The Lincoln County Jail has in place a procedure for inmates to file grievances to the jailer. (R. 53, at 3). Pursuant to this procedure, inmates are to make a written statement and place the statement in a sealed envelope addressed to the jailer. (*Id.*). Thereafter, a detention officer or staff member delivers the grievance to the jailer, and the jailer then reviews the grievance. (*Id.*). Dennis Ray, a sergeant at the Lincoln County Jail, testified that after an inmate is given a grievance form, he has fifteen or twenty minutes to fill out the grievance form. The shift commander then signs the form, puts it in a sealed envelope, and then places the envelope in the lieutenant or jailer's mailbox. (R. 60, at 14).

At his deposition, Plaintiff estimated that he had filed approximately five grievances about his ankle injury. (R. 50, at 17). He stated that he placed them in the mailbox on the door after he filled out the form, but he never received a response to any of the grievances that he made. (*Id.* at 16-19). Defendant Gooch testified that he reviews all grievances he receives, but there have been issues in the past where he has not received all grievances filed by inmates. (R. 41, at 14).

Since failure to exhaust is an affirmative defense, a defendant bears the burden of proof to establish that a plaintiff failed to exhaust his administrative remedies under the PLRA. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012). An inmate must make affirmative efforts to comply with an institution's administrative procedures, and the Court "analyzes whether those 'efforts to exhaust were sufficient under the circumstances.'" *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (*quoting Napier v. Laurel Cnty, Ky.*, 636 F.3d 218, 224 (6th Cir. 2011)). As noted above, Plaintiff testified that he filed five grievances, but received no response. (R. 50, at 18). "It is well established that 'administrative remedies are exhausted when prison officials fail to timely respond

to a properly filed grievance.'" *Risher*, 639 F.3d at 240 (*quoting Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004)). Here, Plaintiff attempted to comply with the grievance process and because he never received a response from Defendant Gooch, he was unable to appeal the jailer's disposition. Accepting the facts in a light most favorable to Plaintiff, Defendants have not shown that Plaintiff failed to exhaust his administrative remedies. *Id.* (holding plaintiff's efforts to comply with administrative procedures were sufficient; plaintiff "did not attempt to bypass the administrative grievance process . . . he affirmatively endeavored to comply with it"). Defendants' argument on this point therefore fails.

### B. Defendant Lincoln County, Kentucky, is entitled to summary judgment on Plaintiff's Eighth and Fourteenth Amendment claims.

Defendant Lincoln County, Kentucky, argues it is entitled to summary judgment on Plaintiff's claims under § 1983 because Plaintiff cannot point to any policy or custom that deprived Plaintiff of his rights. (R. 63-1, at 18).

In order to establish municipal liability under 42 U.S.C. § 1983, a plaintiff must show that the alleged constitutional violation occurred because of a municipal policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A plaintiff can make this showing "by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

Defendants note and Plaintiff concedes that Lincoln County Jail has a written policy regarding the medical care to be provided to inmates. (R. 63-1, 18-19; R. 69, at 8). That policy

provides, "[a]ll Lincoln County jail inmates shall be entitled to health care comparable to that available to citizens in the surrounding community. . . No officer or other employee shall ever summarily or arbitrarily deny an inmate's request for medical services." (R. 51, at 68). Plaintiff argues that he did not receive the care provided for by the Jail's written policy since he first became a pretrial detainee at Lincoln County Jail. (R. 69, at 9). Although Plaintiff complains that he has not received the medical care he believes he should have received pursuant to the Jail's policy, he has not shown that the Jail's alleged denial of adequate medical care to him was the result of an official policy. Nor has he shown the existence of a widespread practice that is "'so permanent and well settled as to constitute a custom or usage' with the force of law." *Webb v. Jessamine Cnty. Fiscal Court*, 802 F. Supp. 2d 870, 885 (E.D. Ky. 2011) (*quoting City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

In his Amended Complaint, Plaintiff claims that Lincoln County Jail has an unwritten policy of "minimizing costs incurred by the Jail and Lincoln County for treatment of prisoners in Jail, including plaintiff." (R. 34-2, at 4). In response to Defendants' Motion for Summary Judgment, Plaintiff has not identified any evidence demonstrating that Lincoln County Jail had an unwritten policy or custom of denying inmates medical care in order to minimize costs. Furthermore, although he was confined at Lincoln County Jail, Plaintiff was actually a Garrard County inmate. (R. 50, at 10). Defendant Gooch testified that Lincoln County Jail has an agreement with Garrard County, which provides that medical bills for inmates confined at Lincoln County Jail that are Garrard County prisoners are to be sent to the Garrard County Fiscal Court for payment. (R. 51, at 20). The agreement itself provides: "The Garrard County Fiscal Court shall be responsible for paying the bills of any outside healthcare providers incurred by Garrard County prisoners, including but not limited

to the cost of medication, doctor bills, dental bills, hospital bills, ambulance bills, etc." (*Id.* at 39). The fact that Lincoln County Jail was not responsible for the payment of Plaintiff's medical treatment undermines Plaintiff's position that his injuries were the result of an unwritten policy to deny inmates medical care to minimize costs.

Furthermore, Plaintiff has not established that the Lincoln County Jail had a custom of denying inmates medical care. There is no evidence before the Court that other inmates were denied medical care in order to minimize costs at the jail. *See Johnson v. Hardin Cnty., Ky.*, 908 F.2d 1280, 1287 (6th Cir. 1990) (deciding that plaintiff did not produce sufficient evidence to demonstrate a custom in the prison where there was no evidence that other prisoners were mistreated at the facility). Accordingly, Plaintiff has failed to establish municipal liability under 42 U.S.C. § 1983, and Defendant Lincoln County, Kentucky is entitled to summary judgment on Plaintiff's § 1983 claims.

Defendants also seek dismissal of Plaintiff's claims against Defendant Gooch in his official capacity. (R. 63-1, at 16). After *Monell*, "[t]here is no longer a need to bring official-capacity suits against local government officials" because the "local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Therefore, Plaintiff's official capacity claims against Defendant Gooch are redundant and should be dismissed. *See Doe v. Claiborne Cnty.*, *Tenn. ex rel. Claiborn Cnty. Bd. of Edu.*, 103 F.3d 495, 510 (6th Cir. 1996) (affirming the dismissal of official capacity claims against government officials "because a suit against an official of the state is treated as a suit against the municipality."); *C.K. v. Bell Cnty. Bd. of Edu.*, 839 F. Supp. 2d 881, 884 (E.D. Ky. 2012) (dismissing official-capacity claims as redundant where plaintiff also asserted claims against the municipality).

**C.    Defendant Gooch is entitled to summary judgment on Plaintiff's claims that he was denied adequate medical care under the Eighth and Fourteenth Amendments.**

Plaintiff alleges that Defendant Gooch was deliberately indifferent to his medical needs by obstructing and delaying treatment for his fractured ankle.  (R. 40, at ¶ 16).  Plaintiff alleges Gooch's denial of medical treatment violated his rights under the Eighth and Fourteenth Amendments.  (*Id.* at ¶¶ 17-18).  Gooch asserts he is entitled to summary judgment on Plaintiff's claims because Plaintiff cannot establish he was deliberately indifferent to his medical needs.  (R. 63-1, at 19-23).

The Eighth Amendment's prohibition against cruel and unusual punishment is violated by an official's "deliberate indifference to serious medical needs of prisoners."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "The Eighth Amendment itself does not apply to pretrial detainees, . . . but the Fourteenth Amendment grants analogous rights to adequate medical treatment to pretrial detainees."  *See Grabow v. County of Macomb*, __ F. App'x __, 2014 WL 4251573, at *5 (6th Cir. Aug. 29, 2014) (*citing City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).  Deliberate indifference claims of pretrial detainees under the Fourteenth Amendment are analyzed under the same rubric as a prisoner's Eighth Amendment claim.  *Id.*; *see also Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013).  Thus, while it appears Plaintiff was a pretrial detainee at the time of the alleged violations, the analysis is the same regardless of his classification.[7]  *Id.*

Deliberate indifference has two components: objective and subjective.  The Sixth Circuit has recently held:

---

[7]Eighth Amendment protection against cruel and unusual punishment does not attach until after conviction and sentence.  *See Graham v. Connor*, 490 U.S. 386, 393 n.6 (1989) (citing *Ingraham v. Wright*, 430 U.S. 651, 671, n.40 (1977) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.").

> Prison officials violate an inmate's Eighth and Fourteenth Amendment right to adequate medical treatment when: (1) "the deprivation alleged [is], objectively, sufficiently serious" such that the inmate "is incarcerated under conditions posing a substantial risk of serious harm"; and (2) the prison official subjectively demonstrates "deliberate indifference to inmate health or safety."

*Grabow,* 2014 WL 4251573, at *5 (*quoting Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (internal quotation marks and citations omitted)).

To satisfy the objective component, the prisoner must demonstrate that the conditions posed a substantial risk of serious harm. *Id.*, at 6 (*citing Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005); *Villegas*, 709 F.3d at 568-69. A medical need is sufficiently serious if it has "been 'diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's treatment.'" *Smith v. Franklin Cnty.*, 227 F. Supp. 2d 667, 676 n.10 (E.D. Ky. 2002) (*quoting Gaudereault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990)); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897-98 (6th Cir. 2004). The medical need must also require immediate attention. *Smith*, 227 F. Supp. 2d at 676 n.10.

Here, Plaintiff's alleged medical condition is sufficiently serious to satisfy the objective component. A layperson would recognize that a broken ankle would require treatment from a medical professional. *See Tomlinson v. Collins*, No. 2:09-cv-125, 2010 WL 4317030, at *5 (N.D. Ohio Oct. 25, 2010) (broken arm is sufficiently serious under the Eighth Amendment), *recommended disposition adopted by* 2011 WL 478835 (N.D. Ohio Feb. 7, 2011); *Briggs v. U.S. Marshals Serv.*, No. 04-2648, 2008 WL 501331, at *5 (W.D. Tenn. Feb. 21, 2008) (holding plaintiff's broken fibula was an obvious injury that a layperson would recognize as needing medical treatment).

Second, to satisfy the subjective component, the prisoner must demonstrate deliberate indifference in that the defendant "subjectively perceived a risk of harm and then disregarded it."

*Johnson*, 398 F.3d at 875 (quoting *Comstock*, 273 F.3d 693, 703 (6th Cir. 2001)). In order to show deliberate indifference, a prisoner must show "more than mere negligence or the misdiagnosis of an ailment." *Comstock*, 273 F.3d at 703. Even if a prisoner could show medical malpractice, that alone would not give rise to a Constitutional claim. *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976). Furthermore, where prisoners receive medical attention and the parties dispute the adequacy of the treatment, courts are "reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also Marksberry v. O'Dea,* 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir.). Consequently, disagreements over medical care cannot create a constitutional claim unless the medical care falls short of "contemporary standards of decency," *Estelle*, 429 U.S. at 103, or it demonstrates an "unnecessary and wanton infliction of pain." *Durham v. Nu'Man*, 97 F.3d 862, 868 (6th Cir. 1996).

Proof of deliberate indifference "requires that an official who actually knew of the serious medical need possessed 'a sufficiently culpable state of mind in denying the medical care.'" *Loggins v. Franklin Cnty., Ohio*, 218 F. App'x 466, 472 (6th Cir. 2007). "[T]he subjective intentions of prison authorities must be demonstrated by objective manifestations of such intent, and cannot be proved by "factually unsupported, conclusory opinions of the court or of the prisoners or of their representatives." *United States v. Michigan,* 940 F.2d 143, 154 n.7 (6th Cir. 1991). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Defendant Gooch argues that he cannot be found to have been deliberately indifferent to Plaintiff's medical needs because he did not know of the underlying medical needs. (R. 63-1, at 20). Defendant Gooch testified in his deposition that he became aware of Plaintiff's ankle injury around November 2010. (R. 51, at 22). Plaintiff has not identified any evidence that Defendant Gooch had personal knowledge of the medical care provided for Plaintiff's injured ankle. Plaintiff seems to argue that Defendant Gooch was involved in the denial of an x-ray in October 2010. When questioned about the refusal of the x-ray to Plaintiff's right ankle on October 21, 2010, Defendant Gooch stated that he would never make a decision to deny an inmate an x-ray recommended by a physician and would never authorize such a decision be made. (R. 51, at 27). Plaintiff also tries to impute Defendant Gooch's involvement in Plaintiff's medical care through a conversation between Defendant Gooch and Plaintiff in May 2011. Plaintiff testified that he asked Defendant Gooch about his ankle and when he was going to get surgery. (R. 50, at 5). According to Plaintiff, Defendant Gooch said he was getting everything taken care of with scheduling. (*Id.* at 6). In his deposition, Defendant Gooch testified that the conversation was brief and was substantially what Plaintiff had testified. (R. 51, at 30). This conversation does not establish that Defendant Gooch consciously disregarded Plaintiff's ankle injury. Plaintiff has made no showing that Jailer Gooch had the requisite mental element of deliberate indifference necessary to rise to the level of a constitutional violation. *See O'Bryan v. Federal Bureau of Prisons,* 2007 WL 2571906, at *13 (E.D. Ky. Sept. 4, 2007) (discussing alleged deliberate indifference cases involving broken bones); *Grant v. Hare,* 1992 WL 249602 (N.D. Ill. Sept. 25, 1992).

Plaintiff acknowledges that Defendant Gooch denies personal knowledge of Plaintiff's medical condition, but states that a paper file that would have reflected Plaintiff's medical condition

was in his own office. (R. 69, at 3). Defendant Gooch testified that he infrequently reviews inmates' medical files, and only does so if there is a specific question of concern. (R. 51, at 20). Plaintiff has not pointed to any evidence that demonstrates Defendant Gooch actually reviewed Plaintiff's medical file and was aware of the treatment that was being provided to Plaintiff by Nurse Brown.

Absent evidence of actual knowledge or personal involvement, Defendant Gooch cannot be held individually liable under the Eighth Amendment for Plaintiff's claims related to his medical care. *See Dajani v. Montgomery Cnty., Ky.*, 59 F. App'x 740, 747-48 (6th Cir. 2003) (finding that individual defendants could not be held liable where plaintiff failed to present evidence of defendants' actual knowledge of medical decision); *Estate of Young v. Martin*, 70 F. App'x 256, 261 (6th Cir. 2003) (same); *Spencer v. Wilson*, No 6:11-128, 2012 WL 2069658, at *4 (E.D. Ky. June 8, 2012) (same).

Plaintiff also attempts to show deliberate indifference by pointing to Defendant Gooch's awareness that there was a potential issue with grievances reaching him. Plaintiff argues that Defendant Gooch took ineffective steps to remedy the problem, stating that Defendant Gooch's "inaction by ignorance resulted from a conscious decision not to fix the system at the risk of inmate welfare. His ignorance was reckless or wilful because he was aware of, but disregarded, a substantial risk he would not learn of inmate grievances, and so leave them untreated." (R. 69, at 3). There is no support for Plaintiff's conclusory statement that Defendant Gooch's handling of the potential grievance issue was the result of a conscious decision not to fix the system. Defendant Gooch testified he investigated the matter, and the results of his investigation were inconclusive. (R. 51, at 15). He further stated that the issue is something he addressed and continues to address periodically with the staff. (*Id.*). Plaintiff's argument on this point is unsupported.

19

To the extent Plaintiff argues that Defendant Gooch is liable for the actions of Nurse Brown and other employees, Defendants are correct that "[r]espondeat superior is not a proper basis for liability under § 1983," and Plaintiff would have to show at a minimum, that the supervisor "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006). Here, Plaintiff has made no such showing. Defendant Gooch testified at his deposition that he first saw the note from Bluegrass Clinic stating that someone at the jail refused the x-ray request after the litigation was filed. (R. 51, at 27-28). Plaintiff has brought forth no evidence establishing that Gooch implicitly authorized, approved, or knowingly acquiesced in decisions made by his staff about Plaintiff's medical treatment. *See Loukas v. Gundy,* 70 F. App'x 245, 246-47 (6th Cir. 2003); *Marksberry v. O'Dea,* 1999 WL 98533, at *2.

## D. Summary judgment is also appropriate in favor of Defendant Gooch because Defendant Gooch is entitled to qualified immunity.

"Qualified immunity protects public officials from liability for civil damages if their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (*quoting Pearson v. Callahan*, 555 U.S. 233, 231 (2009)). The Court follows a two-prong analysis to determine whether a public official is entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 233, 815-16 (2009). First, the Court decides whether, in the case of a summary judgment motion, the facts shown make out a violation of a constitutional right. *Id.* at 816. Second, the Court "must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* If either prong is not satisfied, meaning either there is no violation of a

constitutional right or the right at issue was not clearly established, the official is entitled to qualified immunity. *Martin*, 712 F.3d at 957. Under the Supreme Court's holding in *Pearson*, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. However, applying the steps sequentially is often beneficial. *Id.*

In this particular case, it is beneficial to begin with the first prong because a determination of whether Plaintiff has shown facts that make out a violation of a constitutional right ends the Court's inquiry. As explained above, Defendant Gooch was not deliberately indifferent to Plaintiff's medical needs. Accordingly, Defendant Gooch is entitled to qualified immunity and cannot be held liable for Plaintiff's claims.

## E. Exercise of jurisdiction over Plaintiff's state-law claims is declined.

Defendants argue they are entitled to summary judgment on Plaintiff's state-law claims based upon Kentucky's immunity doctrines. (R. 63-1, at 25-29). In his Amended Complaint, Plaintiff asserts four state-law claims: (1) Defendant Gooch's negligence caused Plaintiff's injuries; (2) Defendant Gooch's negligent supervision of his employees caused Plaintiff to suffer serious and permanent physical injuries; (3) Defendant Gooch failed to protect Plaintiff from foreseeable injury; and (4) Defendant Gooch was deliberately and recklessly indifferent to Plaintiff's serious injuries, inflicting severe emotional distress. (R. 35-2, at 5-8).

As the Court has decided to dismiss Plaintiff's federal claims, it will decline to exercise supplemental jurisdiction over the pendent state-law claims. *See* 28 U.S.C. § 1367(c)(3) (noting that a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction"). Further,

"[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966); *see also Musson Theatrical, Inc. v. Fed. Express Corp.,* 89 F.3d 1244, 1254 (6th Cir. 1996) (stating the dictum in *Gibbs* generally remains valid when analyzing whether state claims should be dismissed under 28 U.S.C. § 1367). "'[I]n the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered ... will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Robert N. Clemens Trust v. Morgan Stanley DW, Inc.,* 485 F.3d 840, 853 (6th Cir. 2007) (*quoting Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988)).

The Sixth Circuit has urged district courts to exercise discretion and dismiss pendent state law claims where the federal claims are also dismissed. *See Brown v. Cassens Transport Co.*, 546 F.3d 347, 365 (6th Cir. 2008) (concluding that a district court abused its discretion by exercising its jurisdiction and addressing the state law claims after dismissing the federal claims). Therefore, while Plaintiff's Amended Complaint and Defendants' Motion for Summary Judgment make arguments regarding state-law torts and immunities, pursuant to 28 U.S.C. § 1367(c)(3), the Court exercises its discretion not to make needless decisions of state law, and shall dismiss without prejudice Plaintiff's remaining claims. *See Booker v. City of Beachwood*, 451 F. App'x 521, 523 (6th Cir. 2011) (holding the district court did not err in declining the exercise of supplemental jurisdiction over plaintiff's intentional infliction of emotional distress claim where the federal claims were dismissed on summary judgment); *Reynosa v. Schultz*, 282 F. App'x 386, 391 (6th Cir. 2008) (holding district court did not abuse its discretion in declining to exercise supplemental jurisdiction after summary judgment in pro se prisoner § 1983 action).

IV.     **CONCLUSION**

For the reasons stated herein, **IT IS ORDERED:**

(1)     that Defendants' Motion for Summary Judgment (R. 63) is hereby **granted;**

(2)     that Count I of Plaintiff's Amended Complaint stating federal claims against Defendants Lincoln County, Kentucky and Jailer David Gooch in his Official and Individual Capacities is hereby **dismissed with prejudice;** and,

(3)     that all remaining Counts of Plaintiff's Amended Complaint stating state-law claims are hereby **dismissed without prejudice.**

Dated this 30th day of September, 2014.

**Signed By:**

**_Candace J. Smith_**

**United States Magistrate Judge**